**IN THE**
**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| | ) **No. 17 CR 822** |
| **v.** | ) **Judge Edmund E. Chang** |
| | ) |
| **JOSE FLORES** | |

**MOTION TO SUPPRESS EVIDENCE AND STATEMENTS**

**I.      Introduction.**

This motion presents an offer of proof in support Mr. Flores's contention that his warrantless arrest on November 15, 2017, leading to the superseding indictment in this matter, was not based on probable cause or a reasonable suspicion.  It further presents an offer of proof that his alleged statements made after his arrest, were made in violation of his *Miranda* rights.   The offer of proof presents a factual difference from the Chicago Police Department's version that attempts to justify Mr. Flores's arrest, search, and alleged waiver of *Miranda* rights.

The offer of proof is based on interviews with defendant, Jose Flores, his fiancé, Carla Galvan, and attorney Jonathon Brayman.  It is expected that each of these witnesses will testify at hearing on this motion, should the court determine there is a sufficient factual dispute and issues of credibility to warrant a hearing.[1]

---

[1] This offer of proof is not intended offer all facts known to the witnesses, but is a summary of their expected testimony.

II.    **Offer of proof**.

Mr. Flores lives with his fiancé, Carla Galvan.  They have been in a committed relationship since 2004 and are raising two children together. He reports that he developed an addiction to cocaine. He reports that on November 15, 2017, he and his Ms. Galvan went to a restaurant in Chicago's "China Town" neighborhood for lunch and to do some shopping.  After lunch, they walked through the shops.  After completing their shopping their intention was to prepare the back yard for the upcoming Thanksgiving holiday.

Mr. Flores reports that he announced to his friends on a social media platform that he was in "Chinatown."  Mr. Flores then received a message from an individual in response to his social media post.  This individual asked Mr. Flores to do him a favor to make a pick up an item for him that was a short distance from "Chinatown."  While the individual did not tell him what the item was, Mr. Flores suspected it was drugs.  Mr. Flores reports that he agreed to do the favor in the hopes it was cocaine, and that he might be given some cocaine to support his cocaine habit.  Mr. Flores was not told he had to make any sort of payment. Mr. Flores was told go to an address at 1923 S. Peoria Ave., Chicago, Illinois.

Mr. Flores told Ms. Galvan he had to do a favor for someone and they had to make a stop nearby.  Mr. Flores drove the short distance to 1900 block of S. Peoria and parked on the street at about 2:30 in the afternoon.  He parked facing north and on the same side of the street as 1923 S. Peoria.  He parked north of that address.  He told Ms. Galvan he'd be back shortly.  She remained in the passenger seat. Mr. Flores walked on

the sidewalk in the direction away from the rear of his vehicle. He walked on the sidewalk looking for the address. He had not been to that address before.

Two individuals the came out of the front door of 1923 S. Peoria, a multi-unit apartment building. Mr. Flores did not recognize either one. After making eye contact, it was apparent they were the people he was told to meet. Mr. Flores saw that both individuals were carrying some object that was fully covered by cloth. Mr. Flores motioned them to his minivan. He could not tell discern what they were carrying as they walked towards his minivan. Mr. Flores could not see any part of the objects protruding from the covering. The two individuals walked north in a straight line at an angle across the sidewalk and toward the rear of his minivan. Mr. Flores open rear door of the minivan. Each then placed the covered objects in the back of his minivan and removed the covering. At that point, Mr. Flores saw that the items were in fact rifles. Mr. Flores quickly covered them with other items and shut the rear hatch.

After shutting the hatch, Mr. Flores told the two individuals, he was hoping for drugs so he could get some for himself. One person (now known to be co-defendant Acosta) told the other individual to go back and get some cocaine for Mr. Flores. That person ran ahead (in the same path as he took to walk to the minivan), back to the apartment building door the two had come out of. Mr. Flores and Acosta followed to the same doorway at 1923 S. Peoria. At the doorway to that building Mr. Flores was handed a small bag of cocaine. Acosta entered the building, Mr. Flores walked straight back to his van and then drove off.

3

Mr. Flores reports that he was never asked to provide any money to the individuals for the item(s) he was told to pick up that day. He was never given any money to be used for such purpose. He and Acosta never walked into any gangway for any purpose.

Ms. Galvan reports that she was in the passenger seat facing in the opposite direction, and did not see what was placed in the back of the van. She reports that after leaving the area, members of the Chicago Police Department (CPD) directed Mr. Flores to pull over his van on the 3600 block of S. Ashland Ave., Chicago. Mr. Flores complied. According to Mr. Flores, at the time he was pulled over, Mr. Flores was not aware that he had violated any traffic laws. CPD officers directed Mr. Flores to get out of his vehicle. He did not feel that he was free to leave. He was placed in handcuffs. As a result of his arrest, search, and seizure, the CPD found a handgun on his person and the two rifles in the back of his van. These three firearms are the firearms that are the subject of the indictment in this case.

Ms. Galvan reports that Mr. Flores asked her to contact his attorney. Mr. Flores reports that he made this request of Ms. Galvan in the presence of the arresting officers. She reports that she asked one of the police officers the address of the police station where the attorney should go to. The officer handed Ms. Galvan the left over Chinese food from their lunch. Ms. Galvan reports that after she left the area, she contacted an attorney for Mr. Flores and provided the information as to his arrest.

Attorney John Brayman reports that he was contacted regarding the arrest of Mr. Flores. Attorney Brayman reports that he went to the police station in order to speak

4

and advice Mr. Flores. Mr. Brayman reports that once he arrived, he notified the police that he wanted to meet with his client Mr. Flores who was in custody. Mr. Brayman reports that he waited approximately an hour and half before being permitted to speak to Mr. Flores. Mr. Flores's interrogation was completed by the time Mr. Brayman was permitted to speak to Mr. Flores. Mr. Brayman reports that he informed the police that he did not want Mr. Flores to be further questioned.

Earlier, after he was taken to the police station, Mr. Flores was placed in an interrogation room. Mr. Flores reports that he was questioned by a number of different law enforcement personnel. He reports that from the beginning of the questioning, he told the police officers that he wanted his attorney to be present and asked the officers for his attorney multiple times throughout the duration of his interrogation. Mr. Flores reports that despite his requests for his attorney, the police continued to question him. He reports that he did not waive his *Miranda* rights. There is no written record of any *Miranda* waivers. He reports that he was never informed that his lawyer had arrived at the police station. Towards the end his questioning, he recalls hearing an officer (who he is unable identify) saying words to the effect of "we can't keep the lawyer waiting anymore." It was shortly after the authorities stopped questioning Mr. Flores, that Mr. Flores was finally allowed to meet with attorney Jonathon Brayman.

### III.   The Chicago Police Department (CPD) version of the stop, seizure, and search of Mr. Flores and his vehicle.

Based on a review of the CPD police reports provided in this case it is expected that the police had developed evidence that Ambrose street gang members were

5

holding meetings in an apartment at 1923 S. Peoria, Chicago, Illinois.  The CPD were

conducting a surveillance of the 1900 block of S. Peoria due to complaints of

increased gang activity on that block and that drugs and guns may be being stored

in an apartment within 1923 S. Peoria.

The CPD Gang Investigation Supplementary report indicates  officers observed

an individual (later identified as Jose Flores) at about 2:30 pm on November 15, 2017

park a vehicle and then wait on the sidewalk in front of 1923 S. Peoria St.  CPD

officer Gallos then reports seeing codefendant Acosta and another individual come

out of 1923 S. Peoria.  Officer Gallos reportedly "clearly" sees a rifle barrel

protruding from under the black garment that Acosta was holding.   Gallos then

alleges then observes Mr. Flores open the rear of his van and Acosta place the rifles

in the rear of the vehicle.  After closing the hatchback rear door, Officer Gallos then

alleges that he sees Mr. Flores motion to Acosta to follow him into a gangway north

of 1919 S. Peoria (apparently the gangway closest to where Mr. Flores had parked

his minivan).   Officer Gallos alleges he sees Mr. Flores leave the rear of his vehicle

and walk into that gangway followed by Mr. Acosta.  An officer Brandon then

alleges to observe Flores and Acosta engage in conversation and sees Flores hand a

lagre bundle of money to Acosta in the rear of that gangway north of 1919 S. Peoria.

The report then indicate that officers saw Mr. Flores and Mr. Acosta walk out of the

gangway.  The officers state that Mr. Flores walks out of the gangway and to the

driver's seat of the minivan. He then drives away.

6

The CPD justification for the warrantless seizure of Mr. Flores and his vehicle is based on the credibility of police version that they were able to see a rifle barrel protruding from the bottom of the covered object that Mr. Acosta was carrying. While the police reports paint a straightforward picture of probable cause or reasonable suspicion, the building surveillance video from 1923 S. Peoria, does not corroborate the police version of events as to the movement of the individuals.

A key assertion by the police is that after Acosta put the rifles in the minivan, they observe Mr. Flores and Mr. Acosta walk across a sidewalk and into a gangway where Mr. Flores hands Mr. Acosta a large bundle of cash. The video surveillance evidence, does not support that police assertion as to this observation. The video evidence is corroborates Mr. Flores's assertions that right after the items were placed in his minivan, the other individual ran ahead and he and Acosta walked directly behind back to the doorway at 1923 S. Peoria. It shows Acosta walking back to the doorway and into the building. It shows Mr. Flores then walking back in the direction of his vehicle. If the CPD actually saw what they claim, they would have seen and thus reported that movement. Along with other inconsistencies with the surveillance video, if is respectfully submitted, the credibility of the police's facts justifying the stop of Mr. Flores's vehicle is not reliable.

It is respectfully suggested that CPD were doing a surveillance of that block or apartment building on November 15, 2017. However, what actually occurred were two Hispanic individuals carried some covered items and place them into van.

That is insufficient to justify the warrantless stop, arrest, and search of a citizen and his vehicle.

IV. **Argument.**

**A. The firearms seized after Mr. Flores was stopped should be suppressed.**

"A warrantless arrest of an individual in a public place for a felony, or a misdemeanor commitment in the officers, presence is consistent with the Fourth Amendment if the arrest is supported by probable cause." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003). Mr. Flores was stopped, arrested, and searched without a warrant being issued. No search or seizure should occur until a warrant has been issued based on probable cause. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). However, "an officer may, consistent with the Fourth Amendment, conduct a brief investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). *See also*, *Terry v. Ohio*, 392 U.S. 1 (1967).

It is undisputed that the police were conducting a surveillance of the 1900 block of S. Peoria Ave. It is undisputed that the police may have evidence that one of the apartments in 1923 S. Peoria was storing guns and drugs. It is disputed that the police saw a gun barrel protruding from the bottom of a covered item being carried out of 1923 S. Peoria. If the police version is not credible, then all that the police saw were two Hispanic Americans coming out of a multiunit apartment building carrying something to the back of minivan. As

far as the police could tell, they could have come out of any one of the apartments in the building. Merely carrying covered items to a car, does not articulate facts to justify reasonable suspicion that a crime is underway.

The fact that the 1900 block of S. Peoria was a "high crime" area is an insufficient bases for establishing reasonable suspicion. *Illinois v. Wardlow*, 528 U.S. at 124. *See, United States v. Brown*, 188 F. 3d 860, 865 (7th Cir. 1999)(holding presence in a neighborhood frequented by drug activity alone in not a basis to conclude criminal conduct); *see also, Brown v. Texas*, 443 U.S. 47, 52 (1979) (rejecting reliance on high-crime area rational because a defendant's activity may be no different from other pedestrian's activity in the area).

When Mr. Flores was stopped, arrested, and searched, it is the defense position that the CPD lacked a warrant, probable cause, or reasonable suspicion. Therefore the firearm recovered from his person and the two firearms recovered from the rear of his minivan were obtained in violation of the Fourth Amendment of the U.S. Constitution and therefore should be suppressed.

### B. The statements made by Mr. Flores after his arrest should be suppressed.

After Mr. Flores was placed under arrest he was taken to the Chicago Police Department's 9th district station. If the court determines that his stop was not based on probable cause or a reasonable and articulable suspicion of criminal conduct, then any statements allegedly made by him after that point should be

9

suppressed pursuant to the exclusionary rule as derivative evidence. *Wong Sun v. United States*, 371 U.S. 471, 484 (1963).

Suppression is not warranted if "the connection between the illegal police conduct and the discovery and seizure of evidence is so attenuated as to dissipate the taint…" *Segura v. United States*, 468 U.S. 796, 805 (1984). In this case, there is no attenuation of the unlawful stop. After his arrest, at the scene Mr. Flores did not waive his *Miranda* rights. This is supported by his requesting that Ms. Galvan to contact his attorney. Mr. Flores continued to ask for his counsel when he was placed in an interrogation room at the 9th district police station. At no point did he waive his Miranda rights or his 6th Amendment right to counsel. Therefore, any subsequent alleged statements the authorities are attributing to him, are not attenuated from his unlawful arrest, and should be suppressed.

Independent of the above, Mr. Flores's statements should be suppressed based in violation of his Fifth Amendment right not to be compelled to be a witness against himself. In *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), the Supreme Court held "the prosecution may not use statement, whether exculpatory or inculpatory, stemming from the custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Prior to the commencement of any interrogation law enforcement officers must warn a defendant that "he has a right to remain silent, that any statement can be used against him, and that he has the right to the presence of an attorney, either retained or appointed…" *Id.* at

444. The rule of Miranda is prophylactic in nature, a statement made in violation must be suppressed even if was made voluntarily. *Id.* If a defendant "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking, there can be no further questioning." *Id.* at 444-445.

The prosecution bears the burden of proving by a preponderance of the evidence that the defendant waived his *Miranda* rights and that the waiver was voluntary. See, *Colorado v. Connelly*, 479 U.S. 157, 168 (1986). While the CPD alleges Mr. Flores waived his right to counsel included in the *Miranda* rights immediately after he was arrested and again at the 9th district, it is belied by the evidence of Ms. Galvan and attorney Brayman.

Mr. Flores did not waive his right to counsel after he was stopped and arrested by the Chicago Police officers. This is corroborated by Ms. Galvan who states he asked her to contact his attorney. This is corroborated by attorney Jonathon Brayman who confirms he was contacted. When Mr. Flores was placed in an interrogation room he requested his counsel, but the interrogators, in violation of *Miranda*, did not stop the questioning. He requested his counsel multiple times during the questioning, but the violations continued. His counsel was at the 9th district, for the sole purpose of effectuating Mr. Flores's *Miranda* rights. Attorney Brayman was denied access to Mr. Flores for approximately an hour and a half. During that time the police interrogation of Mr. Flores continued. Attorney Brayman was only permitted access to Mr. Flores after the

interrogation was completed.  The CPD claim that Mr. Flores waived his right to counsel is simply incredible in this context.

For the above stated reasons, it is respectfully suggested that any statements made by Mr. Flores after his arrest also be suppressed and this motion be granted.

Respectfully Submitted,

FEDERAL DEFENDER PROGRAM
John F. Murphy,
Executive Director

By:      *s/ Piyush Chandra*
         Piyush Chandra
         Attorney for Jose Flores

## CERTIFICATE OF SERVICE

The undersigned, <u>Piyush Chandra</u>, an attorney with the Federal Defender Program hereby certifies that in accordance with FED.R.CRIM. P. 49, FED. R. CIV. P5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document(s):

## MOTION TO SUPPRESS EVIDENCE AND STATEMENTS

was served pursuant to the district courts ECF system as to ECF filings, if any, and were sent by first-class mail/hand delivery on <u>October 1, 2019</u>, to counsel/parties that are non-ECF filers.

By: <u>*s/ Piyush Chandra*</u>
    Piyush Chandra
    FEDERAL DEFENDER PROGRAM
    55 E. Monroe St., Suite 2800
    Chicago, Illinois 60603
    (312) 621-8300